## PLINY P. DAVIS *vs.* MATTAWAMKEAG LOG DRIVING COMPANY.

### Penobscot.   Opinion February 15, 1890.

*Charter.   Dam.   Flowage.   Remedy.   R. S.,* 141, *c.* 126.   *Private Laws,*
1849, *c.* 269.

Legislative grants of franchises or privileges to persons or corporations are never to be extended by construction beyond the plain terms in which they are conferred.

A corporation built a dam across a river, below one of its branches, on which the plaintiff's land is situated, and several miles below the place where the charter authorized the dam to be erected.   This dam caused the water to flow back upon the plaintiff's land, and he sued in trespass for the damage occasioned thereby.   The defendant corporation claiming that the dam was authorized by its charter admitted the damage, but contended that the remedy provided in its charter therefor, was exclusive of all other remedies. It being found by the court that the charter did not authorize the dam to be built at such place; *Held,* that parties whose lands were flowed by the dam may maintain trespass.

AGREED STATEMENT.

This· was an action of trespass submitted to the law court upon· an agreed statement of facts.

The material facts as stated by the parties are as follows :

The Mattawamkeag Dam Company was incorporated under c. 269 of the private laws of 1849, and was authorized to erect and maintain a dam across the Mattawamkeag River above Gordon Falls, near a place called Jimskitticook, for the purpose of facilitating the transportation of logs and lumber down said river ; and to improve the falls below said dam for the running of logs by the erection of dams, etc., and was empowered to flow lands so far as necessary for the purpose ; and it was provided

that the proprietors might obtain damages, sustained by flowing lands, in the same mode and manner and extent, and under the same conditions and limitations as were provided in c. 126 of R. S. of 1841, for damages where lands were flowed by the erection of mills.

Chapter 441 of the private laws of 1851, purported to alter and amend said chapter 269, of the private laws of 1849.

The Mattawamkeag Log Driving Company was incorporated under c. 91 of the private laws of 1853, and was authorized to drive all logs and other timber that might be in the Mattawamkeag river, from Skitticook to Mattawamkeag Point, to the Penobscot boom, and for the purpose clear out, and improve the navigation of the river, and build dams, etc., where the same might be lawfully done.

By c. 288 of the private laws of 1863, the Mattawamkeag Dam Company was authorized and required to assign and convey by deed all its dams, works and improvements, and its franchise, to the Mattawamkeag Log Driving Company, and by deed dated August 6, 1863, recorded in Penobscot registry of deeds, vol. 330, p. 242, did convey all its dams, works and improvements and its franchise to the Mattawamkeag Log Driving Company.

By c. 169 of the private laws of 1867, the legislature recognized and ratified said conveyance.

In 1886, the Mattawamkeag Log Driving Company built the dam, complained of, for the purpose of improving the falls below it for the running of logs, which dam is four or five miles below the original dam built by the Mattawamkeag Dam Company.

Gordon Falls are four or five miles below the dam built in 1886.

It was agreed that the original dam built at Jimskitticook is not in existence, and that the Molunkus stream, a branch of the Mattawamkeag, upon which the flowage complained of was had, enters the Mattawamkeag river below where the original dam stood and above the present dam of 1886.

The defendant claimed as an inference from the foregoing private laws and statement of facts, that the dam complained of was built under the franchise of the Mattawamkeag Dam Company,

conveyed as aforesaid to the defendant company; and further claimed that, if so built under the franchise of the Dam Company, this action cannot be maintained, because damages for flowing land must be sought in the manner pointed out in the charter of the Dam Company.

It was also agreed that the action, if it can be maintained, should stand for trial for an assessment of damages; otherwise a non-suit should be entered.

*Barker, Vose and Barker,* for plaintiff.

If the dam was built under defendants' own charter, it is not disputed that the remedy sought is proper, since it contains neither right of eminent domain, nor provisions for a remedy. If built under the old charter of the M. Dam Co., the remedy there provided is cumulative, and not restrictive. The damages "may" be collected, etc. *Milford* v. *Orono,* 50 Maine, p. 533; *Low* v. *Durham,* 61 Id. p. 569; *Weymouth* v. *Pen. Log D. Co.;* 71 Id. 29; Potter's Dwarris, p. 220, n. 27; *Gouch* v. *Stevenson,* 13 Maine, 371; *Reynolds* v. *Hanrahan,* 100 Mass. 313; *Coffin* v. *Field,* 7 Cush. 355; *Chesley* v. *Smith,* 1 N. H. 20; *Williams* v. *People,* 24 N. Y. 409; *Warner* v. *Burr,* 23 Wend. 155-6; *People* v. *Cook,* 14 Barb. 490; *People* v. *Schermerhorn,* 19 Barb. 558; *Train* v. *Boston Disinfecting Co.,* 144 Mass. 523.

*F. A. Wilson and C. F. Woodward,* for defendant.

Defendant had the right to build this dam, under the transfer of the charter from the M. D. Co., and having thus built it, the presumption is that it was so done rightfully and not wrongfully.

The M. D. Co. charter authorized the building a dam above Gordon Falls; the improvement of the falls below such dam by the erection of other dams; taking of lands, property and materials, not only for the dam at Jimskitticook but for other dams; and flow lands so far as necessary to accomplish its purposes, which were not only to build the dam at Jimskitticook but to improve the falls below. It expressly mentions Gordon Falls; hence it was intended to authorize the improvement of all falls below the dam to be erected down to and including Gordon Falls,

which are four or five miles below this dam. This dam is not a substitute for the old one, but one authorized to be erected for improving the falls below, down to and including Gordon Falls. The agreed facts expressly show this. The legislature knowing as appears by the charter, that, there were falls in the river, down as far as Gordon Falls, intended the corporation should have all the necessary power to improve all that might be an obstacle to driving; otherwise the powers granted would be worse than useless.

Upon the question of remedy counsel cited: *Underwood* v. *Scythe Co.*, 41 Maine, 291, 296; *Stowell* v. *Flagg*, 11 Mass. 364, 365; *Monmouth* v. *Gardiner*, 35 Maine, 247–253; R. S., 1841, c. 126.

EMERY, J. The plaintiff's land is upon the Molunkus Stream, a branch of the Mattawamkeag river. The defendant company has built a dam across the Mattawamkeag below the Molunkus, which dam backs the water up the Mattawamkeag and the Molunkus, and upon the plaintiff's land. The plaintiff says such flowage is wrongful, and he brings this action of trespass. The defendant company admits the plaintiff's right to compensation, but say the flowage is rightful, and does not subject it to an action of trespass as for a wrong.

The defendant company say, that it has from the state a franchise and authority to erect and maintain this dam, and cause this flowage. The counsel frankly admits it has no such franchise in its own charter, and he bases the claim solely upon a franchise and authority which he says were granted to the Mattawamkeag Dam Company in its charter in 1849, and to which the defendant company has lawfully and effectually succeeded. The first question therefore is, whether there was granted by the state to the Mattawamkeag Dam Company the franchise and authority to erect and maintain the dam below the Molunkus.

The franchise and authority of the Mattawamkeag Dam Company were expressed in these words (special laws of 1849, c. 269, § 2): "Said corporation shall have the right to erect and main-

tain a dam across the Mattawamkeag river above Gordon's Falls, and near a place called "Jimskitticook" for the purpose of facilitating the transportation of logs and lumber down said river;—and said corporation may improve the falls below their dam for the running of logs, by the erection of dams, and side-booms and the removal of rocks and other obstructions; * * * and they are empowered to flow lands as far as may be necessary to accomplish their object." Provision is then made for compensation to land owners for flowage as under the mill act.

"Jimskitticook" is above the mouth of the Molunkus and some four or five miles above the present dam, now complained of, and some eight or ten miles above Gordon Falls. The Mattawamkeag Dam Company under its said charter built a dam at Jimskitticook, and above the Molunkus. This dam is not now in existence. In 1886, the defendant company built the present dam some four or five miles below the dam first built at Jimskitticook. Does the language of the Dam Company's charter, above quoted, extend its franchise so far as to authorize the building of the last dam at such a distance below the Jimskitticook, the place of its first dam?

Legislative grants of franchises or privileges to persons or corporations are never to be extended by construction beyond the plain terms in which they are conferred. No rule is better settled than that charters of incorporation are to be construed strictly against the corporators. The just presumption in every such case is, that the state has granted in express terms all it designed to grant. Cooley, Const. Lim. 394, 395, 396 and cases there cited. (The citations will be found to sustain the text.) The U. S. Supreme Court in *Fertilizing Co.* v. *Hyde Park*, 97 U. S. p. 666, used this strong language : "The rule of construction in this class of cases is, that it shall be most strongly against the corporation. Every reasonable doubt is to be resolved adversely. Nothing is to be taken as conceded but what is given in unmistakable terms, or by implication equally clear. The affirmative must be shown. Silence is negation, and doubt is fatal to the claim. This doctrine is vital to the public welfare. It is axiomatic in the jurisprudence of this court."

When the holders of a legislative franchise claim that it

authorizes them to exercise the sovereign prerogative of eminent domain to take or flow the land of a citizen against his consent, the principles of construction above stated should be applied with all their force. The court is the bulwark of the citizen, and will scrutinize carefully and even jealously every claim of right to take his property against his will. It will also test every step of the procedure in exercising such right, and insist on the strictest regularity. Cooley, Const. Lim. 530. *Leavitt* v. *Eastman*, 77 Maine, 117 ; *Hamor* v. *Water Co.*, 78 Maine, 127.

Recurring now to the language of the charter under which the authority is claimed in this case, and reading it in the light of these principles of construction, we think the legislature did not intend to give the Dam Company a roving franchise up and down the Mattawamkeag river, but rather intended to locate it and its works in one locality, "near the place called Jimskitticook." The company is first authorized to build a dam, (note the singular number), and the place for the dam is designated. Of course the company could not build that dam anywhere else. Then it is authorized to "improve the falls below its dam." We think this authority is confined to the falls next below, and near the dam. The word "falls," though plural in form, usually means only one locality, and when the designation is of falls below a dam, it usually means the falls immediately below. Dams are usually built upon or near falls.

We think the company's authority cannot be rightfully extended so far beyond the vicinity of the dam near the Jimskitticook. It may be useful and perhaps necessary for the purposes of the company that its authority to build dams should extend down the river four or five miles, and include its present dam. If so, it is for the legislature to grant the authority, but as was said in *Penn. R. R.* v. *Canal Commissioners*, 21 Pa. St. 22, in doing so, the legislature should use direct, plain English words that will leave no doubt. In this case we have at least a doubt, and "a doubt is fatal to the claim."

*Defendant defaulted. Damages to be assessed at nisi prius.*

PETERS, C. J., VIRGIN, LIBBEY and FOSTER, JJ., concurred.